**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RICKY SMITH,

                              Petitioner,

          v.                                                03-CV-1265
                                                              (TJM/DRH)

SUPERINTENDENT GIAMBRUNO,

                              Respondent.

_____

**APPEARANCES:**                          **OF COUNSEL:**

RICKY SMITH
Petitioner Pro Se
No. 01-B-1216
Hale Creek Correctional Facility
Post Office Box 950
Johnstown, New York 12095

HON. ELIOT SPITZER                          PATRICK F. MacRAE, ESQ.
Attorney General for the                    Assistant Attorney General
   State of New York
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

          Petitioner pro se Ricky Smith ("Smith") is currently an inmate in the custody of the

New York State Department of Correctional Services (DOCS) at Hale Creek Correctional

Facility.  Smith pleaded guilty to criminal possession of a controlled substance in the fourth

degree on May 21, 2001 in Onondaga County Court and was sentenced to an

_____

          [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C § 636(b) and N.D.N.Y.L.R. 72.4.

indeterminate term of six to twelve years imprisonment. He is presently serving that sentence. Smith now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that his case was dismissed with prejudice and his Sixth Amendment right to the effective assistance of counsel was violated both at trial and on appeal. For the reasons which follow, it is recommended that the petition be denied.

## I. Background

Smith was arrested and charged with two counts of criminal possession of a controlled substance in the third degree and one count of criminal possession in the fourth degree on March 21, 2000.  T. 3, 37, 94.[2]  At the time of his arrest, Smith was on parole for attempted criminal possession of a controlled substance. T.  4, 31, 284- 85.  On May 3, 2000, Smith met with the District Attorney's office and agreed to provide information about drug and weapons dealers in exchange for a dismissal or a reduced sentence.  T. 279- 80, 294- 95.  As a result of these negotiations, the District Attorney's office contacted the Division of Parole and received permission to release Smith in accordance with their agreement.  T. 284- 85.  A four-page cooperation agreement was drafted which provided that Smith would cooperate with authorities and act as an informant in exchange for reduced charges. T. 279-80.  This agreement was never executed.  T. 279- 80.

Instead, on June 5, 2000, an second agreement, the "Narcotics Bureau Debriefing Agreement," was executed. This agreement provided that "the defendant, with [] knowledge and consent, has agreed to submit to [an] interview in order to attempt to

---

[2]"T." followed by a number refers to the pages of the transcript of Smith's state court record filed with respondent's answer. Dockect No. 11.

advance [the defendant's] cooperation." T. 178. The agreement further provided that Smith would testify against "any person whose arrest was the result" of his cooperation and emphasized that the office had not made any statements or promises to Smith or his attorney regarding any disposition of his case. T. 178.

Smith failed to cooperate and comply with the terms of the cooperation agreement was indicted on one count of criminal possession in the fourth degree. T. 1-7, 42- 43. On February 20, 2001, Smith pleaded guilty to criminal possession in the fourth degree in satisfaction of that indictment in return for an agreement that he would receive a sentence no greater than four to eight years imprisonment. T. 21. In the interim between the plea and sentencing, Smith was accorded a second opportunity to cooperate in exchange for a reduction of his sentence. T. 21. The court informed Smith that his plea agreement was contingent on his cooperation and the sentence would be reduced based on cooperation he provided to the District Attorney's office. T. 21- 22. Further, the court cautioned Smith that nothing in the agreement was definite and, if he were to "get involved in any new criminal conduct, particularly other drug offense . . ." while awaiting sentencing, his sentence could be increased up to seven and one-half to fifteen years imprisonment. T. 26- 27.

On the date of sentencing, the Assistant District Attorney informed the court that Smith had been arrested on drug possession charges and requested that Smith's sentence be enhanced in light of the new arrest. T. 30- 31. Smith's attorney explained that Smith believed he was acting as an informant at the time, pursuant to his agreement with the District Attorney's office. T. 33. The court ruled that because Smith was arrested on drug possession charges and admitted to having drugs on his person, the agreement

was revoked. T. 34.  The court then sentenced Smith to six to twelve years imprisonment. T. 34.

Smith appealed the enhanced sentence, with new counsel, on the grounds that the inquiry conducted by the trial court about the arrest was insufficient to invoke the enhancement of the sentence.  T. 52.  The Appellate Division unanimously affirmed the sentence.  People v. Smith, 300 A.D.2d 1038, 1038 (4th Dep't 2002); T. 74.  The Court of Appeals denied Smith's application for leave to appeal on March 10, 2003. People v. Smith, 99 N.Y.2d 632, 632 (2003); T. 78.  This action followed.

## II. Discussion

### A. Unexecuted Agreement

Smith contends that the unsigned plea agreement *was* signed, and that it was altered after the fact to remove his signature. Respondent contends that Smith's claims rest on a mistaken assumption that the first agreement was executed and that the charges were dismissed with prejudice.  The record reveals that these contentions are without merit. Not only was the first agreement not executed or signed by Smith, but that agreement was contingent on his cooperation,  which he never provided.  Thus, the record belies the critical factual assumption underlying Smith's claims here.

Therefore, the petition should be denied for this reason.

### B. Ineffective Assistance of Counsel

### 1. Trial Counsel

Smith contends that his trial counsel was ineffective for failing to put the first plea

4

agreement on the record.

A claim of ineffective assistance of counsel is required to show both that the attorney's performance fell below "'an objective standard of reasonableness'" and that the defendant suffered prejudice because of the defective performance. Strickland v. Washington, 466 U.S. 668, 688, 693 (1984); United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000). To satisfy the first prong, a court must ask "whether defense counsel's actions were objectively reasonable considering all the circumstances." Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000). This inquiry requires a court to be "highly deferential" to counsel's performance. Strickland, 466 U.S. at 689. Moreover, there is a strong presumption that counsel's conduct was reasonable and that any challenged conduct might be considered sound strategy. Kiesser v. New York, 56 F.3d 16, 18 (2d Cir. 1995) (per curiam) (internal quotations omitted); see also Maddox v. Lord, 818 F.2d 1058, 1061 (2d Cir.1987). To satisfy the second prong, a court must determine whether there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different. McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. . This standard has been expanded to include claims arising out of plea agreement negotiations. Hill v. Lockhart, 474 U.S. 52, 57- 58 (1985).

Smith's contention that his attorney failed to put the first agreement on the record is not substantiated by the record. See subsection A supra. The only agreement that could potentially have required dismissal of the charges against Smith was never executed. Moreover, that agreement would have only required dismissal of the charges without prejudice, not with prejudice, and was contingent upon Smith's cooperation with police. T.

289.  In its place, an agreement was signed and executed which did not require dismissal of the charges against Smith.  T. 178, 317.  Therefore, there was no potential dismissal of the charges with prejudice and any alleged failure of counsel to place the first agreement on the record did not rise to the level of ineffective assistance of counsel.

Smith also contends that his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel, a former assistance district attorney, had a conflict of interest stemming from his former prosecution of Smith in 1998.   "[W]hen the claim of ineffective assistance of counsel is based on an asserted conflict of interest, a less exacting standard applies, and prejudice may be presumed."  Moree, 220 F.3d at 69.  Representation must be free of conflicts of interest. Fletcher v. Mann, 956 F. Supp. 168, 172 (N.D.N.Y. 1997) (Scullin, J.). Conflicts of interest that violate the Sixth Amendment "fall into one of three categories distinguished by the severity of the deprivation and the showing of prejudice." United States v. O'Neil, 118 F.3d 65, 70 (2d Cir. 1997). The first category of per se violations are recognized in only two circumstances: when the attorney is not licensed to practice and when the attorney has been implicated in the defendant's crime. Id.

If the conflict is not a per se violation, it is analyzed to determine if it is an actual conflict. Id.  Actual conflicts of interest consist of those which do not rise to the level of per se violations but  may "jeopardize the adequacy of representation." Id.  An actual conflict of interest occurs when "the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'"  Moree, 220 F.3d at 69.  In order to prevail on an actual conflict of interest, the defendant must show a "lapse of representation." Cuyler v. Sullivan, 446 U.S. 335, 349 (1980); United States v. Stantini, 85

6

F.3d 9, 19 (2d Cir. 1996). A "lapse in representation" can be shown by illustrating that there was a "'plausible alternative defense strategy'" that was not utilized by counsel. Moree, 220 F.3d at 69 (quoting Winkler v. Keane, 7 F.3d 304, 309 (2d Cir. 1993) (citation omitted)).

If the conflict of interest does not fall into the category of a per se or actual violation, it must be reviewed under a reasonableness standard as articulated in Stickland.  466 U.S. at 688, 694. "[A]lthough the possibilities for actual conflicts are very real when attorneys 'switch sides' in a subsequent criminal case involving the same defendant, such conflicts do not automatically occur." Maiden v. Bunnell, 35 F.3d 477, 480 (9th Cir. 1994). The fact that Smith's trial counsel was a former prosecutor does not rise to the level of a per se violation nor is it an actual conflict because there was no "lapse in representation" and Smith has not shown that there was a "plausible alternative defense strategy" that was not used. Moree, 220 F.3d at 69 (quoting Winkler, 7 F.3d at 309  (citation omitted). Thus, Smith's claim should be evaluated under the reasonableness standard of Strickland. 466 U.S. at 694.

In evaluating Smith's claim under Strickland's reasonableness standard,  the record does not support Smith's claim that counsel's representation of Smith fell below the reasonable standard.  Trial counsel was able to obtain Smith's release on bail and negotiated an agreement with the District Attorney's office whereby Smith's cooperation could have reduced the sentence he would receive.  T. 4, 12, 178.   In addition, when that cooperation agreement failed, counsel negotiated a reasonable plea bargain where, again, Smith's cooperation could have reduced his sentence.  T. 21- 22.  Smith's arrest violated that agreement and counsel negotiated a third favorable agreement.  Smith did not suffer

any prejudice as a result of any potential conflict. To the contrary, Smith's trial counsel acted with prudence on his behalf.

Smith had claimed that his plea agreement was coerced, and was not voluntarily made, but there is no evidence in the record to support such a claim.  T. 79- 81.  It is clear from the plea allocution that Smith knowingly and voluntarily agreed to the plea arrangement.  T. 21- 28. The trial court also asked Smith if he understood every part of the agreement and explained that by accepting the plea, he was waiving certain rights.  T. 23-25.

Therefore, the petition on this ground should be denied.


## 2. Appellate Counsel

Smith also contends that he was denied the effective assistance of appellate counsel because his counsel failed to obtain certain documents and failed to assert all of the claims that Smith had requested.  Traverse (Docket No. 14) at 2, 5-6. When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues on appeal while pursuing issues that were clearly and significantly weaker."  Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)). A petitioner asserting "constitutionally deficient performance" must show more than counsel's failure to raise a nonfrivolous argument, as counsel is not required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments.  Jones v. Barnes, 463 U.S. 741, 751-52 (1983); Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001).  Moreover, "the Sixth Amendment does not require that all colorable state law

8

arguments be raised on direct appeal." <u>Sellan</u>, 262 F.3d at 310.

There is no evidence in the record that supports Smith's contention that his appellate counsel failed to make any claim, nor is there evidence that appellate counsel failed to obtain file documents from the District Attorney's office. To the contrary, in his communications with Smith, appellate counsel informed Smith that he was actively seeking documents and had obtained what he believed was the entire file.  T. 342- 44. Appellate counsel also explained to Smith that there was little or no evidence to support the claims Smith wished to be asserted on appeal.  T. 343- 44.  Therefore, there was no ineffective assistance of appellate counsel.

The petition on this ground should be denied.


### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**; and

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Secretary of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:       May 5, 2005
             Albany, New York

*David R. Homer*

United States Magistrate Judge